**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-16-0000211**
**27-JUN-2019**
**08:19 AM**

NOS. CAAP-16-0000211, CAAP-16-0000581 AND CAAP-16-0000622

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

### CAAP-16-0000211

VICTORIA WARD CENTER, L.L.C.,
a Delaware limited liability company,
Plaintiff/Counterclaim-Defendant/Appellee/Cross-Appellant,
v.
GOLD GUYS HOLDINGS, LLC, a Minnesota limited liability company,
dba GOLD GUYS HAWAII, LLC, a Hawaii limited liability company,
Defendant/Counterclaim-Plaintiff/Appellant/Cross-Appellee,
and
SHANE A. MAGUIRE,
Defendant/Appellant/Cross-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-2461-09)

AND

### CAAP-16-0000581

VICTORIA WARD CENTER, L.L.C.,
A Delaware limited liability company,
Plaintiff/Counterclaim-Defendant/Appellee/Cross-Appellant,
v.
GOLD GUYS HOLDINGS, LLC, a Minnesota limited liability company,
dba Gold Guys Hawaii, LLC, a Hawaii limited liability company,
Defendant/Counterclaim-Plaintiff/Appellant/Cross-Appellee,
and
SHANE A. MAGUIRE,
Defendant/Appellant/Cross-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-2461-09)

AND

CAAP-16-0000622

VICTORIA WARD CENTER, L.L.C.,
a Delaware limited liability company,
Plaintiff/Counterclaim-Defendant/Appellee/Cross-Appellant,
v.
GOLD GUYS HOLDINGS, LLC, a Minnesota limited liability company,
dba Gold Guys Hawaii, LLC, a Hawaii limited liability company,
Defendant/Counterclaim-Plaintiff/Appellant/Cross-Appellee,
and
SHANE A. MAGUIRE,
Defendant/Appellant/Cross-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-2461-09)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Reifurth and Chan, JJ.)

This consolidated appeal arises out of a lease dispute between Defendant/Counterclaim-Plaintiff/Appellant/Cross-Appellee Gold Guys Holdings, LLC, dba Gold Guys Hawaii, LLC (Gold Guys) and Defendant/Appellant/Cross-Appellee Shane A. Maguire (Maguire) (collectively, Appellants) and Plaintiff/Counterclaim-Defendant/Appellee/Cross-Appellant Victoria Ward Center, L.L.C. (Ward).

Appellants appeal, and Ward cross-appeals, from the February 22, 2016 Judgment (2/22/16 Judgment) entered by the Circuit Court of the First Circuit (circuit court),[1] which entered judgment pursuant to a jury verdict (1) in favor of Ward and against Appellants as to Ward's complaint, and (2) in favor of Gold Guys and against Ward as to Gold Guys' second amended counterclaim. Both parties also challenge the circuit court's post-judgment rulings regarding, *inter alia*, a motion for new trial and motions for attorneys' fees, costs, and prejudgment interest.

**I. BACKGROUND**

**A. Factual Background**

In April 2010, Ward licensed to Gold Guys a retail

---

[1] The Honorable Karen T. Nakasone presided.

2

space (Space No. B00021C) in Ward Centre,[2] 1200 Ala Moana Blvd., Honolulu, Hawai'i 96814 pursuant to a license agreement (2010 License Agreement). The 2010 License Agreement provided for a term running from May 1, 2010, to July 30, 2011, and was executed by Joseph Beasy (Beasy), a co-owner of Gold Guys, and Donna Farrell (Farrell), the former general manager of Ward Centers.[3]

In early 2011, Gold Guys subsequently licensed an additional retail space (Space No. B02104B) across the hall, pursuant to a temporary revocable license agreement (2011 License Agreement) between Gold Guys and Ward, in its capacity as manager for owner Howard Hughes Corporation (Howard Hughes).[4] The 2011 License Agreement provided for a term running from March 1, 2011, to February 28, 2012, and was executed by Maguire, as co-owner of Gold Guys, and Farrell. The 2011 License Agreement also included a clause (Prohibited Radius Clause) providing: "Prohibited Radius: Within ten (10) miles of the perimeter of Ward Centers or within Kahala Mall."

Shortly after, Ward Plaza-Warehouse, LLC (Ward Plaza)[5] entered into a temporary revocable license agreement with Secured Gold Buyers (Secured) for a space in Ward Warehouse. The license agreement provided for a term running from March 1, 2011, to March 31, 2012.

In March 2011, Gold Guys became aware that Secured would be opening a store in Ward Warehouse and relayed to Ward its displeasure with the news. Secured eventually closed its store in Ward Warehouse as its license agreement for the space expired on March 31, 2012.

On February 14, 2012, Gold Guys entered into a long-

---

[2] Ward Centre shopping center is also referred to and known as "Ward Center."

[3] Ward Centers, now known as Ward Village, is comprised of multiple shopping centers including: Ward Entertainment Center; Ward Village Shops; Ward Centre; Ward Warehouse; and Ward Gateway Center.

[4] At the time Gold Guys entered into the 2010 License Agreement, Ward and the rest of the Ward Centers shopping centers were owned by General Growth Properties (GGP), but were subsequently acquired by Howard Hughes.

[5] Although Ward Plaza is a separate legal entity from Ward, both Ward and Ward Plaza are sister companies owned by Howard Hughes.

term lease agreement with Ward for the first space in Ward Center (Space No. B00021C) (2012 Center Lease) and a long-term lease agreement with Ward Plaza for the space formerly occupied by Secured in Ward Warehouse (Space A001111) (2012 Warehouse Lease). The 2012 Center Lease provided an effective date of January 1, 2012. The 2012 Warehouse Lease provided a commencement date of May 1, 2012, or the date on which Gold Guys opened for business in Ward Warehouse, whichever was earlier.

In May 2013, Gold Guys defaulted on their rental payments for the Ward Center retail space, and Ward initiated the underlying action in this case against Gold Guys and Shane Maguire, as guarantor, for breach of the 2012 Center Lease.

B.    **Procedural Background**

On May 23, 2013, Ward filed a complaint for breach of the 2012 Center Lease against Appellants in the District Court of the First Circuit (district court), Civ. No. 1RC13-1-3862. Ward sought both possession of the subject property and compensatory money damages.

On June 26, 2013, the district court entered a judgment for possession in favor of Ward and against Appellants, which did not adjudicate the issue of compensatory money damages.

On September 9, 2013, as a result of a demand for a jury trial filed by Appellants, the district court entered an order transferring this case to the circuit court, where it became Civ. No. 13-1-2461-09.

On October 15, 2013, Appellants filed an answer to Ward's complaint in the circuit court. Gold Guys (but not Maguire) also filed a counterclaim against Ward for breach of the 2012 Center Lease and for tortious interference. On January 8, 2014, Appellants filed a first amended answer and Gold Guys filed a first amended counterclaim.[6] On August 5, 2014, Gold Guys stipulated to dismiss with prejudice its claim for tortious interference.

_____

[6]    The relief requested in the first amended counterclaim was the rescission of the 2012 Center Lease, whereas the relief requested in the counterclaim was the rescission of the 2012 Warehouse Lease. In all other respects, the first amended counterclaim was identical to the counterclaim.

4

On November 13, 2015, the circuit court entered partial summary judgment in Gold Guys' favor, ruling that Ward breached the Prohibited Radius Clause in the 2011 License Agreement when Ward Plaza licensed the space in Ward Warehouse to Secured.[7]

On January 5, 2016, Gold Guys filed a second amended counterclaim, asserting a single cause of action against Ward for breach of the 2011 License Agreement. The second amended counterclaim alleged that "[Ward] breached the 2011 License Agreement when [Ward] licensed space to a [Gold Guys] competitor within ten miles of the Ward Center Shopping Centers, in violation of the Prohibited Radius Clause of the 2011 License Agreement."

On January 11, 2016, prior to the trial, the circuit court entered its Order Regarding Court's Modified Instruction 3.5 and Related Issues (Jury Instruction Order) establishing the following:

> 1. The Civil Pattern Jury Instruction No 3.5, is modified by the court as follows:
>
> > In this case, the issue of liability for breach of the 2011 License Agreement between Plaintiff Victoria Ward Centre and Defendant Gold Guys has already been decided against Plaintiff.
> > It has been determined that Plaintiff Ward Centre breached the 2011 License Agreement and harmed Defendant Gold Guys, when Plaintiff Ward Centre's sister company, Ward Warehouse, licensed space to a Secured Gold Buyers, a competitor of Defendant Gold Guys.
> > The burden is still on Defendant Gold Guys to prove the nature and extent of any damages suffered by Defendant Gold Guys.
> > Therefore, the only question you must decide is: what amount of damages, if any, Defendant Gold Guys is entitled to, for the breach of the 2011 License Agreement.
>
> 2. In opening statement, both sides may refer to this instruction and quote from it. Background factual details consistent with this instruction are allowed, in opening statement.
>
> 3. In opening statement and during trial, any mention of "court ruling" or "court order" is prohibited, and any mention of the court or the judge as having determined the

---

[7] Gold Guys did not plead breach of the 2011 License Agreement in either its counterclaim or first amended counterclaim. On December 28, 2015, the circuit court entered an order granting in part and denying in part Appellants' motion to amend its counterclaim, ruling that the parties had litigated breach of the 2011 License Agreement by consent and that there is no claim for breach of the 2012 Center Lease.

issue of breach, is prohibited. [Hawaiʻi Rules of Evidence (HRE)] Rule 403.

> 4. In opening statement and during trial, any mention of the "prohibited radius clause", or any other similar contractual language from the 2011 License Agreement, shall be prohibited. HRE Rule 402, 403.

Several witnesses were called to testify at the jury trial, including Farrell, in her capacity as the former manager of Ward Centers and a signer of the 2011 License Agreement. In response to questioning from Ward's counsel during direct examination, Farrell testified that exclusivity provisions were not common in lease agreements for Ward Centers. During cross-examination, Appellants' counsel then attempted to question Farrell about whether there was an exclusivity provision in Gold Guys' 2011 License Agreement, which line of questioning the circuit court precluded.

On January 21, 2016, the jury issued a verdict: (1) in favor of Ward and against Appellants as to Ward's complaint for breach of the 2012 Center Lease, awarding Ward money damages in the amount of $216,860.02; and (2) in favor of Gold Guys and against Ward as to the damages component of Gold Guys' second amended counterclaim for breach of the 2011 License Agreement, awarding Gold Guys money damages in the amount of $1.00.

On February 18, 2016, Appellants filed a Hawaiʻi Rules of Civil Procedure (HRCP) Rule 59 (2000) post-judgment motion for a new trial or, in the alternative, additur (Motion for New Trial/Additur). In support of the motion, Appellants asserted: "(1) the jury's verdict [was] grossly inadequate and against the manifest weight of the evidence; [and] (2) the jury was confused or ignored the [circuit court's] prior finding on exclusivity and 'harm' and/or accepted [Ward's] improper argument of 'foreseeability.'"

On February 22, 2016, the circuit court entered the 2/22/16 Judgment pursuant to the jury verdict.

On February 23, 2016, Ward filed an HRCP Rule 54(d) post-judgment motion for attorneys' fees, costs, and prejudgment interest (Ward's Motion for Attorneys' Fees/Costs/Interest).

On March 3, 2016, Gold Guys filed an HRCP Rule 54(d)

post-judgment motion for costs (Gold Guys' Motion for Costs).

On March 22, 2016, Gold Guys filed a notice of appeal from the 2/22/16 Judgment, resulting in CAAP-16-0000211.

On April 6, 2016, the circuit court held a hearing on Appellants' Motion for New Trial/Additur. At the beginning of the hearing, the circuit court shared its initial concerns that evidentiary error had occurred during Farrell's testimony. Despite its initial inclinations, the circuit court proceeded to hear arguments from both parties and took the matter under advisement.

On May 31, 2016, the circuit court entered a post-judgment order denying Appellants' Motion for New Trial/Additur (Order Denying Motion for New Trial/Additur). The circuit court ruled that the jury's verdict was neither inadequate nor against the manifest weight of the evidence, there was no evidence of jury confusion, no evidentiary error occurred, and even if any evidentiary error had occurred, that it was waived because Appellants had failed to make an objection at trial.[8] The circuit court also reasoned that additur has not yet been approved as a lawful remedy by Hawai'i courts and would not be an appropriate remedy in this case.

On July 19, 2016, the circuit court entered a post-judgment order purporting to grant Ward's Motion for Attorneys' Fees/Costs/Interest (Order Granting Ward's Motion for Attorneys' Fees/Costs/Interest). On the same day, the circuit court also entered a post-judgment order purporting to grant Gold Guys' Motion for Costs (Order Granting Gold Guys' Motion for Costs).

On August 17, 2016, the circuit court entered a "Final Judgment" (8/17/16 Judgment) which re-entered judgment pursuant to the jury verdict and additionally entered judgment on the orders regarding Ward's Motion for Attorneys' Fees/Costs/Interest and Gold Guys' Motion for Costs.

On August 18, 2016, Gold Guys filed a notice of appeal from the Order Granting Ward's Motion for Attorneys'

---

[8] In its order, the circuit court also referenced the comments that it had made at the April 6, 2016 hearing but concluded that, upon a closer review of the entire direct examination, no evidentiary error had occurred.

Fees/Costs/Interest, which resulted in CAAP-16-0000581.[9] On the same day, Ward also filed a cross-appeal in CAAP-16-0000211, seeking appellate review of the 2/22/16 Judgment and other ancillary rulings, such as the orders granting Ward's Motion for Attorneys' Fees/Costs/Interest and Gold Guys' Motion for Costs.

On September 16, 2016, Gold Guys filed a notice of appeal from the 8/17/16 Judgment, which resulted in CAAP-16-0000622.

The appeals in CAAP-16-0000211, CAAP-16-0000581, and CAAP-16-0000622 were consolidated under CAAP-16-0000211 on November 4, 2016.

## II. POINTS OF ERROR

On appeal, Appellants argue that the circuit court erred by: (1) admitting direct examination testimony of Farrell insinuating the lack of an exclusivity provision/Prohibited Radius Clause in the 2011 License Agreement; (2) precluding Appellants from cross-examining Farrell regarding said testimony; (3) further modifying jury instruction 3.5 to remove language that had originally been included as set forth in the Jury Instruction Order; (4) allowing Ward, in its closing argument, to improperly suggest that there was no exclusivity provision/radius restriction in the 2011 License Agreement; (5) entering a judgment that was manifestly against the weight of the evidence as to Gold Guys' damages; (6) denying Appellants' motion for new trial despite evidentiary errors and the manifest weight of the evidence; (7) deeming additur an unavailable and inappropriate remedy and denying Appellants' alternative motion for additur; and (8) granting Ward's Motion for Attorneys' Fees/Costs/Interest after the 90-day deadline set forth in HRAP Rule 4(a)(3) and entering the 8/17/16 Judgment.

On cross-appeal, Ward contends that the circuit court

---

[9] This appeal of the Order Granting Ward's Motion for Attorneys' Fees/Costs/Interest is, in effect, another appeal from the 2/22/16 Judgment. By way of their March 22, 2016 appeal from the 2/22/16 Judgment, Appellants automatically obtained appellate review of the Order Granting Ward's Motion for Attorneys' Fees/Costs/Interest. Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(3) (2016) ("The notice of appeal shall be deemed to appeal the disposition of all post-judgment motions that are timely filed after entry of the judgment or order.").

erred by: (1) partially denying Ward's Motion for Attorneys' Fees/Costs/Interest; (2) partially granting Gold Guys' Motion for Costs; (3) granting Gold Guys' motion for partial summary judgment on the counterclaim and denying Ward's motion for summary judgment on the counterclaim; and (4) admitting the testimony, report, and curriculum vitae of Gold Guys' expert witness, Thomas Loudat, Ph.D. (Loudat). Ward states, however, that consideration of its points of error pertaining to summary judgment and Loudat's testimony is necessary only if this court vacates the judgment and orders a new trial.

We resolve the parties' points of error as follows.

## III. STANDARDS OF REVIEW

### A. Admission of Evidence

> Different standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. Where the evidentiary ruling at issue concerns admissibility based upon relevance, under Hawai'i Rules of Evidence (HRE) Rules 401 and 402, the proper standard of appellate review is the right/wrong standard. Evidentiary decisions based on HRE Rule 403, which require a judgment call on the part of the trial court, are reviewed for an abuse of discretion. The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.

Tabieros v. Clark Equip. Co., 85 Hawai'i 336, 350-51, 944 P.2d 1279, 1293-94 (1997) (block quote format altered) (internal citations, brackets, quotation marks, and ellipsis omitted).

### B. Jury Instructions

"The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." Moyle v. Y & Y Hyup Shin, Corp., 118 Hawai'i 385, 391, 191 P.3d 1062, 1068 (2008) (internal quotation marks and citation omitted).

### C. Jury Verdict on Damages

> In reviewing a jury's award of damages,
>
> [appellate courts] are bound by the general rule that "a finding of an amount of damages is so much within the exclusive province of the jury that it will not be disturbed on appellate review unless palpably not supported by the

9

> evidence, or . . . as to demonstrate that the jury in assessing damages acted against rules of law or suffered their passions or prejudices to mislead them."

Sato v. Tawata, 79 Hawai'i 14, 21-22, 897 P.2d 941, 948-49 (1995) (quoting Quedding v. Arisumi Bros., 66 Haw. 335, 339, 661 P.2d 706, 709 (1983)).

**D. Motion for New Trial**

"Both the grant and the denial of a motion for new trial is within the trial court's discretion, and [the appellate court] will not reverse that decision absent a clear abuse of discretion." Kawamata Farms, Inc. v. United Agri. Prods., 86 Hawai'i 214, 251, 948 P.2d 1055, 1092 (1997) (internal quotation marks and citation omitted). "A court abuses its discretion whenever it exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party." Abastillas v. Kekona, 87 Hawai'i 446, 449, 958 P.2d 1136, 1139 (1998) (internal quotation marks, citation, and ellipsis omitted).

**E. Attorneys' Fees and Costs**

> [The appellate] court reviews the denial and granting of attorney's fees under the abuse of discretion standard. The same standard applies to [the appellate] court's review of the amount of a trial court's award of attorney's fees.

Chun v. Bd. of Trs. of Emps. Ret. Sys., 106 Hawai'i 416, 431, 106 P.3d 339, 354 (2005) (citations, quotation marks, original brackets, and ellipses omitted).

**IV. DISCUSSION**

**A. 2/22/16 Judgment and Motion for New Trial/Additur**

Appellants essentially argue that the jury verdict cannot stand, and that the 2/22/16 Judgment must therefore be vacated, due to (1) the manifest weight of the evidence and (2) evidentiary errors causing jury confusion. Appellants further contend that the circuit court abused its discretion in denying Appellants' motion for new trial/additur on these bases.

**1. Jury Confusion Regarding Exclusivity**

Appellants contend that the circuit court erred when it admitted the testimony of Farrell discussing "exclusivity" and precluded Appellants from cross-examining Farrell on the issue of "exclusivity." The testimonial statements in contention are

10

contained in the following exchanges during direct examination discussing Farrell's conversation with Beasy after Beasy became aware of Secured's licensing of a space in Ward Warehouse:

[WARD'S COUNSEL:] What else did you tell Joe Beasy?

[FARRELL:] Well, typically when a tenant is upset about us bringing in somebody who has a similar business or a like product that they're selling, I have had this happen and it still happens that I explain to the tenants that none of the tenants, none of the retailers in our centers have exclusive agreements and that we don't do that because we want to be able to offer customers the opportunity to make business decisions and go and buy products and service from the stores that give them the best deals.

Additionally, after questioning about letters of intent and discussions Farrell had with Beasy about Gold Guys further leasing space, Farrell's testimony continued:

[WARD'S COUNSEL:] And based on your experience as a General Manager at Ward Centers, was an exclusivity provision a common provision in lease agreements?

[FARRELL:] No, it was not.

[WARD'S COUNSEL:] And in your experience, who at Ward Centers had an exclusivity provision in their agreements?

[FARRELL:] The only ones that typically have them are either anchor tenants or the big box retailers like the Borders and the theater, Consolidated Theaters, and, you know, Dave and Busters. Those leases I know had some type of exclusive language and/or a radius on each.

[WARD'S COUNSEL:] And these --

[APPELLANTS' COUNSEL]: Your Honor, may I approach the bench, please?

[WARD'S COUNSEL]: I only have one last question.

THE COURT: Okay. Overruled.

[APPELLANTS' COUNSEL]: Ask your last question.

THE COURT: Last question.

[WARD'S COUNSEL]: I withdraw that. I don't have any further questions.

The following exchange then occurred during Appellants' cross-examination of Farrell:

[APPELLANTS' COUNSEL:] Is your assumption in testifying here today that <u>in the 2011 license agreement, Gold Guys did not have exclusivity?</u>

[WARD'S COUNSEL]: Objection.

[FARRELL:] Yes.

> [APPELLANTS' COUNSEL:] Did you meet with –
>
> THE COURT: You know what? I'm going to sustain and –- <u>I'm going to sustain the objection.</u>
>
> [APPELLANTS' COUNSEL]: Now may I approach the bench, Your Honor?
>
> THE COURT: Yes.

(Emphases added). After a lengthy bench conference, the circuit court concluded as follows:

> THE COURT: The radius came out in passing and it came out in the context of lease, and I don't think there was an intentional violation.
>
> [APPELLANTS' COUNSEL]: As long as there's instructions.
>
> THE COURT: So you can question, but I'm not going to allow any of that. Don't talk about radius, okay, so that's not being allowed. And we'll just take it objection by objection.

Appellants argue that the admission of Farrell's testimony during Ward's direct examination constituted evidentiary error because it was in violation of the Jury Instruction Order's direction not to discuss the Prohibited Radius Clause. Appellants claim that Farrell's testimony gave the jury the false impression that Gold Guys did not have exclusivity under the 2011 License Agreement, thereby causing jury confusion as to the issue of breach of the 2011 License Agreement (which had already been adjudicated via summary judgment) and the damages resulting from the breach (which was the issue for the jury to determine at trial). Appellants also contend that the circuit court's preclusion of Appellants from cross-examining Farrell as to any exclusivity provisions in the 2011 License Agreement and about the Jury Instruction Order further exacerbated the jury confusion as it did not allow Appellants to correct the alleged error caused by Farrell's direct testimony about exclusivity. This jury confusion, Appellants argue, "is the only explanation for the $1.00 jury verdict in the face of the undisputed factual evidence" of Gold Guys' damages. We are not persuaded by Appellants' argument.

First, there was no objection to Farrell's testimony on direct examination about exclusivity provisions. Appellants' counsel asked for a bench conference after the testimony had been

given. Second, Farrell's testimony during Ward's direct examination was not in direct violation of the Jury Instruction Order. The Jury Instruction Order precluded the parties from mentioning "the 'prohibited radius clause', or any other similar contractual language from the 2011 License Agreement." (Emphasis added). Ward's line of questioning, although less than precise, sought to rebut Gold Guys' duress defense against Ward's claim for breach of contract, by demonstrating that Gold Guys obtained a provision in the 2012 Center Lease that other entities seldom got. The line of questioning by Ward's counsel discussed lease agreements and therefore did not touch upon the existence of exclusivity arrangements in the 2011 License Agreement. The circuit court therefore did not err in admitting Farrell's testimony. No violation of the Jury Instruction Order occurred until Appellants' cross-examination, when Appellants' counsel explicitly attempted to ask Farrell about exclusivity in the 2011 License Agreement. The circuit court did not err in precluding Appellants from cross-examining Farrell on the existence of an exclusivity provision in the 2011 License Agreement, which would have directly violated the Jury Instruction Order.

We also reject Appellants' contention that, during closing argument, Ward improperly interjected issues of foreseeability related to the radius restriction in the 2011 License Agreement, thereby exacerbating already existing jury confusion. Even with liability for breach of the 2011 License Agreement already decided, the foreseeability of the damages resulting from the breach was still an element of the measure of damages that Gold Guys had the burden to prove at trial.[10] As

---

[10] The circuit court read the following instruction to the jury regarding the measure of damages for a breach of contract:

> The measure of damages for a breach of contract is the amount of money which will fairly compensate a party for any losses caused by the breach which were reasonably foreseeable to both parties at the time they entered into the contract. The amount of damages must be proved with reasonable certainty and may not be based upon mere speculation or guess. Any damages which you award must be reasonable in amount. If a party has been damaged by the breach, but did not prove the amount of damages with reasonable certainty, you must award that party nominal damages in the amount of $1.00.

(continued...)

13

such, Ward's closing argument properly referenced foreseeability as an element of Gold Guys' counterclaim for breach of contract damages.

Appellants also argue that the circuit court's omission of certain language from the final jury instructions caused further jury confusion as to the issue of damages resulting from Ward's breach of the 2011 License Agreement. The circuit court's final jury instructions did not include the following language that had originally been included in the instruction (and which had been read during opening statements) as established by the Jury Instruction Order: "It has been determined that Plaintiff Ward Centre breached the 2011 License Agreement and harmed Defendant Gold Guys, when Plaintiff Ward Centre's sister company, Ward Warehouse, licensed space to a Secured Gold Buyers, a competitor of Defendant Gold Guys." However, the final jury instruction still provided that the issue of liability for breach of the 2011 License Agreement had already been decided in favor of Gold Guys and that the only question for the jury to decide was the amount of damages.

The record reveals that Appellants had numerous opportunities to object to the final modified jury instruction that they now challenge. At each of these opportunities, Appellants not only failed to object, they expressly approved the instruction. The final modified jury instruction was therefore given by agreement of both parties. Moreover, Appellants' counsel discussed and stressed the instruction to the jury during closing argument. Inasmuch as Appellants did not object to the final jury instruction, Appellants urge this court to recognize plain error. We find no such plain error where the final instruction, even with the omission of the indicated sentence in this case, is not "prejudicially insufficient, erroneous, inconsistent, or misleading." Moyle, 118 Hawai'i at 391, 191 P.3d at 1068 (citation omitted).

The primary basis for Appellants' appeal of the jury

_____

[10](...continued)
(Emphasis added.)

verdict is that the jury must have been confused as to the existence of an exclusivity/radius restriction in the 2011 License Agreement. Appellants do not provide this court with any evidence of jury confusion, nor do we find any such evidence upon review of the record.

The record reflects that both parties made numerous statements to the jury clarifying that liability for breach of the 2011 License Agreement had already been established and that the scope of the jury trial on Gold Guys' counterclaim was limited to determining the amount of damages to be awarded. Both parties referenced the instruction in each of their opening statements and again in each of their closing arguments. These repeated statements to the jury correctly articulated the jury's responsibilities per the instruction and there were no inconsistencies.

The record further reflects more than one occasion on which the circuit court instructed the jury about Gold Guys' counterclaim. The circuit court instructed the jury before Gold Guys' case-in-chief, as follows:

> In this case, the issue of liability for breach of the 2011 license agreement between Plaintiff Victoria Ward Center and Defendant Gold Guys has already been decided against Plaintiff. It has been determined that Plaintiff Ward Center breached the 2011 license agreement and harmed Defendant Gold Guys when Plaintiff Ward Center's sister company Ward Warehouse licensed space to Secured Gold Buyers, a competitor of Defendant Gold Guys.
> The burden is still on Defendant Gold Guys to prove the nature and extent of any damages suffered by Defendant Gold Guys. Therefore, the only question you must decide is what amount of damages, if any, Defendant Gold Guys is entitled to for the breach of the 2011 license agreement.

The circuit court instructed the jury again in its final jury instructions before jury deliberations, as follows:

> In this case, the issue of liability on the counterclaim for breach of the 2011 license agreement has already been decided against counterclaim defendant Ward Center, and in favor of counterclaim plaintiff Gold Guys. The burden is still on counterclaim plaintiff Gold Guys to prove the nature and extent of any damages suffered by Gold Guys on its counterclaim. Therefore, as to the counterclaim, the only question you must decide is what amount of damages, if any, counterclaim plaintiff Gold Guys is entitled to for the breach of the 2011 license agreement.

"As a rule, juries are presumed to be reasonable and follow all of the trial court's instructions." <u>Sato</u>, 79 Hawai'i

at 21, 897 P.2d at 948 (quoting Montalvo v. Lapez, 77 Hawai'i 282, 301, 884 P.2d 345, 364 (1994)). On this record, we conclude that there was no evidence that jury confusion led to an erroneous jury verdict.

We therefore conclude that there were no evidentiary or prejudicial instructional errors resulting in jury confusion as to the existence of an exclusivity/radius restriction in the 2011 License Agreement, and that the circuit court did not abuse its discretion in denying Appellants' motion for new trial on this basis.

### 2. Weight of Evidence

Gold Guys also argues that the circuit court erred when it entered judgment on the jury verdict awarding Appellants $1.00 in damages on its breach of contract counterclaim because the award was against the manifest weight of the evidence presented. Specifically, Gold Guys contends that it presented "undisputed evidence" of its loss of net profits and that Ward did not offer admissible evidence to refute Gold Guys' purported damages.

At trial, Gold Guys had the burden of establishing its damages. Gold Guys' purported evidence consisted of the testimonies of Gold Guys' Chief Financial Officer (Beasy) and Chief Executive Officer (Maguire), Gold Guys' financial records before and after Secured moved into Ward Warehouse, and the report and testimony of Loudat, as an expert witness in the field of economics.

At trial, Appellants essentially argued that Gold Guys' performance during the time that Secured was at Ward Warehouse was lower than it would have been (based on Loudat's projections, which were in turn based on the historical performance of Gold Guys' Hawai'i operations) and that these losses were a foreseeable result of Ward's breach of the 2011 License Agreement. On appeal, Appellants argue that Ward did not present any evidence to refute Gold Guys' evidence of the amount of "lost profits," and thus, because the amounts were not disputed, the jury verdict of nominal damages was against the manifest weight of the evidence.

Although Ward indeed did not expressly refute or

16

challenge Gold Guys' decreased profits, Ward presented to the jury alternative explanations for the purported losses. Specifically, Ward leveraged testimony regarding: the peak of gold prices in mid-2011 and the steady decrease thereafter, Gold Guys' highest gross revenue month occurring in August 2011 (a few months after Secured had moved in to Ward Warehouse), Gold Guys' decline in revenue even after Secured left Ward Warehouse, and Gold Guys' alleged use of the second retail space in Ward Center (the subject of the 2011 License Agreement) as storage rather than a retail front. Thus, contrary to Gold Guys' assertion, Ward did present substantial evidence that Gold Guys did not suffer anything more than nominal damages resulting from Ward's breach of the 2011 License Agreement.

Although Gold Guys presented evidence of its damages, it is the jury's function, as fact-finder, to weigh the evidence presented before it and determine the credibility of the witnesses. See Kato v. Funari, 118 Hawai'i 375, 381, 191 P.3d 1052, 1058 (2008) ("[T]he well-settled principle in this jurisdiction [is] that 'the proper amount of damages to be awarded is within the exclusive province of the jury, since jurors are the sole judges of all disputed questions of fact.'" (Original brackets, ellipsis, and citation omitted)). The jury's verdict of $1.00 indicates that the jury, upon review of the evidence presented to them at trial and in consideration of the jury instruction on breach of contract damages,[11] concluded that Gold Guys had been damaged by Ward's breach of the 2011 License Agreement but that Gold Guys did not meet its burden to prove the

_____

[11]     The circuit court gave the jury the following jury instruction on breach of contract damages:

> The measure of damages for a breach of contract is the amount of money which will fairly compensate a party for any losses caused by the breach which were reasonably foreseeable to both parties at the time they entered into the contract. The amount of damages must be proved with reasonable certainty and may not be based upon mere speculation or guess. Any damages which you award must be reasonable in amount. If a party has been damaged by the breach, but did not prove the amount of damages with reasonable certainty, you must award that party nominal damages in the amount of $1.00.

(Emphasis added).

17

amount of damages with reasonable certainty, over Ward's contrary evidence. See Ferreira v. Honolulu Star-Bulletin, Ltd., 44 Haw. 567, 576, 356 P.2d 651, 656 (1960) ("To authorize a recovery of more than nominal damages, facts must exist and be shown by the evidence which afford a basis for measuring the plaintiff's loss with reasonable certainty. The damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture, or surmise.").

"[A trial court's] conclusion that a verdict is not against the weight of the evidence is sustained unless we are of the opinion that the undisputed evidence results in a verdict that is without legal support such that justice requires a new trial[.]" Miyamoto v. Lum, 104 Hawai'i 1, 11, 84 P.3d 509, 519 (2004) (citation omitted). Here, there was enough evidence for the jury to conclude that Gold Guys' damages resulting from the breach of the 2011 License Agreement were not established to a reasonable certainty. See Lyon v. Bush, 49 Haw. 116, 118, 412 P.2d 662, 664 (1966) (holding that an appellate court will not upset the denial of a motion for new trial if there is substantial evidence, more than a scintilla, to support the jury's verdict).

Thus, we conclude that the circuit court did not abuse its discretion in denying Appellants' motion for new trial based on Appellants' contention that the jury verdict was against the manifest weight of the evidence.[12]

We therefore affirm the 2/22/16 Judgment pursuant to the jury verdict and the circuit court's subsequent denial of Appellant's Motion for New Trial/Additur. Accordingly, we need not address Ward's conditional points of errors regarding the circuit court's handling of matters during the jury trial (i.e., the circuit court's granting of Gold Guys' motion for partial summary judgment, denial of Ward's motion for summary judgment, and admission of Loudat's testimony).

---

[12]    Appellants also contend that the circuit court erred in deeming additur an unavailable and inappropriate remedy and correspondingly denying Appellants' alternative motion for additur. Inasmuch as we conclude that the jury verdict was proper, we need not address Appellants' argument regarding the circuit court's denial of additur as an available and appropriate remedy.

**B.    Attorneys' Fees, Costs, and Interest**

Appellants argue that Ward's Motion for Attorneys' Fees/Costs/Interest was deemed denied by operation of law under HRAP Rule 4(a)(3).  At the time Ward filed its motion for attorneys' fees, costs, and interest, HRAP Rule 4(a)(3) (2015) provided:

> (3) TIME TO APPEAL AFFECTED BY POST-JUDGMENT MOTIONS.  If any party files a timely motion for judgment as a matter of law, to amend findings or make additional findings, for a new trial, to reconsider, alter or amend the judgment or order, or for attorney's fees or costs, the time for filing the notice of appeal is extended until 30 days after entry of an order disposing of the motion; provided, that the failure to dispose of any motion by order entered upon the record within 90 days after the date the motion was filed shall constitute a denial of the motion.

(Emphasis added).[13]  This rule "provides that the court has 90 days to dispose of a [post-judgment tolling motion], regardless of when the notice of appeal is filed." Buscher v. Boning, 114 Hawai‘i 202, 221, 159 P.3d 814, 833 (2007).  A post-judgment motion is deemed denied by operation of law when the trial court fails to enter an order on the motion within ninety days after the motion was filed. Cty of Haw. v. C & J Coupe Family Ltd. P'ship, 119 Hawai‘i 352, 367, 198 P.3d 615, 630 (2008).

Here, the circuit court entered judgment on February 22, 2016, and Ward's Motion for Attorneys' Fees/Costs/Interest was timely filed on February 23, 2016.  The 90-day time period established by HRAP Rule 4(a)(3) expired on May 23, 2016, at which point Ward's Motion for Attorneys' Fees/Costs/Interest was deemed denied by operation of law.  See HRAP Rule 26 (computation of periods of time prescribed by HRAP).  However, the circuit court did not enter an order on the motion until July 19, 2016, over a month past the 90-day deadline.  The circuit court did not have the authority to grant the post-judgment motion after the ninetieth day after February 23, 2016, and the Order Granting Ward's Motion for Attorneys' Fees/Costs/Interest was thus a nullity for purposes of awarding

---

[13]    "[A] motion for prejudgment interest is a motion to alter or amend a judgment under HRCP Rule 59(e)[.]" Ditto v. McCurdy, 86 Hawai‘i 93, 112-13, 947 P.2d 961, 980-81 (App. 1997), aff'd in part, rev'd in part on other grounds, 86 Hawai‘i 84, 947 P.2d 952 (1997).

fees, costs, and interest. See Century Campus Hous. Mgmt., L.P. v. Elda Hana, LLC, Nos. CAAP-15-0000020, CAAP-15-0000470, 2018 WL 637373, at *18 (Haw. App. Jan. 31, 2018) (mem. op.); In re Int'l Union of Painters & Allied Trades, Painters Local Union 1791 v. Endo Painting Serv. Inc., Nos. CAAP-12-0000661, CAAP-12-0001094, CAAP-13-0000187, 2015 WL 3649836, at *4 (Haw. App. June 10, 2015) (mem. op.).

For the same reasons, the circuit court's July 19, 2016 Order Granting Gold Guys' Motion for Costs was also a nullity because it was entered more than ninety days after Gold Guys' Motion for Costs was filed on March 3, 2016.

We therefore vacate the Order Granting Ward's Motion for Attorneys' Fees/Costs/Interest and the Order Granting Gold Guys' Motion for Costs. Accordingly, we need not address the parties' remaining arguments regarding the award of attorneys' fees, costs, and interest. Our conclusion that the motions for attorneys' fees and costs were deemed denied does not preclude the circuit court from addressing these issues on remand. We remand the case so that both parties may re-assert their claims for attorneys' fees, costs, and interest without prejudice from the deemed denial of their previous motions. See C & J Coupe, 119 Hawai'i at 367-68, 198 P.3d at 630-31; In re Int'l Union of Painters & Allied Trades, 2015 WL 3649836, at *5-6.

C.    8/17/16 Judgment

Appellants seek to vacate the 8/17/16 Judgment because it incorporated the circuit court's untimely and null award of attorneys' fees, costs, and prejudgment interest, and because it was not needed in light of the 2/22/16 Judgment.

The 8/17/16 Judgment addresses matters beyond the items contained in the 2/22/16 Judgment, including awards for attorneys' fees, costs, and pre- and post-judgment interest. As we previously ruled in an order issued on September 29, 2016, the original 2/22/16 Judgment is a final appealable judgment under Jenkins v. Cades Schutte Fleming & Wright, 76 Hawai'i 115, 119, 869 P.2d 1334, 1338 (1994). The 2/22/16 Judgment resolved all substantive claims by all parties, despite leaving the attorneys' fees, costs, and prejudgment interest unresolved. See HRCP Rule

58 ("The entry of the judgment shall not be delayed for the taxing of costs."); <u>CRSC, Inc. v. Sage Diamond Co., Inc.</u>, 95 Hawai'i 301, 307, 22 P.3d 97, 103 (App. 2001) ("The entry of judgment and taxation of costs are separate legal acts." (Citation, internal quotation marks, and brackets omitted)).

On March 22, 2016, Gold Guys filed a notice of appeal from the 2/22/16 Judgment and "[g]enerally, the filing of a notice of appeal divests the trial court of jurisdiction over the appealed case." <u>TSA Int'l Ltd. v. Shimizu Corp.</u>, 92 Hawai'i 243, 265, 990 P.2d 713, 735 (1999) (citations omitted).[14] One exception is that, under HRAP Rule 4(a)(3), the circuit court retained jurisdiction for ninety days to resolve any timely post-judgment motions set forth in that rule. <u>See</u> <u>Buscher</u>, 114 Hawai'i at 221, 159 P.3d at 833 (holding that HRAP Rule 4(a)(3) "provides that the court has 90 days to dispose of a postjudgment motion for costs, <u>regardless of when the notice of appeal is filed</u>." (emphasis added)).

As discussed above, the circuit court failed to rule on Ward's Motion for Attorneys' Fees/Costs/Interest and Gold Guys' Motion for Costs in the required ninety days. Thus, the orders on those motions, as well as the inclusion of those items in the 8/17/16 Judgment, are a nullity. Furthermore, given the notice of appeal filed on March 22, 2016, the circuit court had no

---

[14]   The record does not indicate why the 8/17/16 Judgment was entered and thus another reason that this judgment may be invalid is the ruling in <u>Wong v. Wong</u>, 79 Hawai'i 26, 29-30, 897 P.2d 953, 956-57 (1995), stating:

> [T]he circuit courts are now governed by the Hawai'i Rules of Civil Procedure. Those rules set forth the circumstances under and the times within which the circuit courts may take actions to review and set aside their own judgments, <u>see</u> HRCP 50, 52(b), 59, and 60, and a rule, HRCP 6(b), that specifically limits the granting of extensions of time to take such actions. <u>Once a valid judgment is entered, the only means by which a circuit court may thereafter alter or amend it is by appropriate motion under HRCP 59(e)</u>.

(Emphasis added) (footnote and citation omitted). <u>But see</u> <u>Wiesenberg v. Univ. of Hawai'i</u>, 138 Hawai'i 210, 378 P.3d 926 (2016) (recognizing an amended judgment that was materially and substantially different from an original judgment and entered without reference to any particular HRCP rule, as the judgment from which to determine whether an appeal was timely). <u>Wiesenberg</u> did not involve a notice of appeal from the original judgment and thus is distinguishable from this case. However, given <u>Wiesenberg</u>, it is unclear if the quoted passage from <u>Wong</u> remains applicable.

jurisdiction to enter the 8/17/16 Judgment.

We thus vacate the 8/17/16 Judgment based on the circuit court's lack of jurisdiction.  See Koga Eng'g & Const., Inc. v. State, 122 Hawaiʻi 60, 84, 222 P.3d 979, 1003 (2010) ("[W]hen reviewing a case where the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction, not on the merits, but for the purpose of correcting the error in jurisdiction." (Citation and internal quotation marks omitted)).

## V. CONCLUSION

Based on the foregoing, we AFFIRM the February 22, 2016 Judgment and VACATE the July 19, 2016 Order Granting Ward's Motion for Award of Attorneys' Fees, Costs, and Prejudgment Interest; the July 19, 2016 Order Granting Gold Guys' Motion for Costs; and the August 17, 2016 Final Judgment, entered in the Circuit Court of the First Circuit.  We remand the case for the parties to assert or re-assert their claims for attorneys' fees, costs, and interest.

DATED:  Honolulu, Hawaiʻi, June 27, 2019.

On the briefs:

Brett M. Larson, Pro Hac Vice,
(Chun Kerr LLP) with
Philip R. Brown on the briefs,
for Gold Guys Holdings, LLC, dba
Gold Guys Hawaii and Shane A.
Maguire.

Robert H. Thomas,
Mark M. Murakami,
and E. Kumau Pineda-Akiona,
(Damon Key Leong Kupchak Hastert)
for Victoria Ward Center, L.L.C.

Chief Judge

Associate Judge

Associate Judge

22